JESSE A. CRIPPS, SBN 222285
  jcripps@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

*Attorneys for Defendants CHEVRON
CORPORATION, CHEVRON GLOBAL
TECHNOLOGY SERVICES COMPANY, and
CHEVRON U.S.A. INC.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILIP QUINNETT, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>CHEVRON CORPORATION, CHEVRON GLOBAL TECHNOLOGY SERVICES CO., & CHEVRON U.S.A. INC.,<br><br>                    Defendants. | CASE NO. 3:25-CV-10950-AMO<br><br>**DEFENDANTS CHEVRON CORPORATION, CHEVRON GLOBAL TECHNOLOGY SERVICES COMPANY, AND CHEVRON U.S.A. INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OR STRIKE CERTAIN ALLEGATIONS UNDER RULE 12(f)**<br><br>Hon. Araceli Martinez-Olguin<br><br>Date:         June 25, 2026<br>Time:        2:00 p.m.<br>Dept.:       Courtroom 10 – 19th Floor |

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD**:

PLEASE TAKE NOTICE THAT on June 25, 2026, at 2:00 p.m., or as soon thereafter as it may be heard, in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Chevron Corporation, Chevron Global Technology Services Company, and Chevron U.S.A. Inc. will and hereby do move this Court for an order dismissing Plaintiff Philip Quinnett's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and/or striking certain allegations in the First Amended Complaint under Rule 12(f).

Defendants seek dismissal of the First Amended Complaint on the following grounds:

- Each of Plaintiff's claims fails as a matter of law as to Chevron Corporation because, even with his new allegations, he still failed to adequately allege that Chevron Corporation is or was his employer;

- Plaintiff's five FEHA claims should be dismissed because FEHA does not apply extraterritorially to his employment in Kazakhstan, and because his reasonable accommodation and interactive process claims fail as a matter of law;

- Plaintiff's two ADA claims should be dismissed because they are time-barred; and

- Plaintiff's California Whistleblower Protection Act claim should be dismissed because he has not plausibly alleged that any decisionmaker responsible for the challenged employment actions was aware of his purported disclosures.

Defendants also request that the Court strike paragraphs 39, 59–60, 90–92, 99, 168, 170, 173, and 179 of the First Amended Complaint to the extent they advance retaliation theories that Plaintiff did not exhaust with the EEOC before filing this lawsuit—namely, allegations that Defendants retaliated against him for (1) participating in another employee's EEOC proceedings and (2) objecting to requests for medical information about his child.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, all cited authorities, all pleadings and papers on file in this action, and any oral argument the Court may consider before or at the time of hearing on this motion.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

DATED: April 16, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jesse A. Cripps*
Jesse A. Cripps

Attorney for Defendants
CHEVRON CORPORATION, CHEVRON
GLOBAL TECHNOLOGY SERVICES
COMPANY, and CHEVRON U.S.A. INC.

Gibson, Dunn &
Crutcher LLP

iii

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED (LOCAL RULE 7-4(A)(3)) .......................... 2

III. BACKGROUND ......................................................................................................... 3

IV. LEGAL STANDARD .................................................................................................. 5

V. ARGUMENT .............................................................................................................. 6

    A. Plaintiff Fails to Allege that Chevron Corporation Is or Was His Employer. ............. 6

    B. California's FEHA Statute Does Not Apply to Plaintiff's Employment in Kazakhstan. ......... 9

    C. Plaintiff Failed to Exhaust Administrative Remedies for All of His Retaliation Theories. ......... 12

        1. Plaintiff's EEOC Charges Do Not Encompass His Retaliation Theories. ...... 13

        2. The New Allegations in Plaintiff's FAC Are Insufficient. ............................ 14

    D. Plaintiff's ADA Claims Based on 2023 Conduct Are Time-Barred. .......................... 16

    E. Plaintiff's Whistleblower Protection Act Claim Fails for Lack of Causation. .......... 18

    F. The Failure to Provide Reasonable Accommodations and Failure to Engage in Interactive Process Claims Fail as a Matter of Law .................................................. 20

VI. CONCLUSION ......................................................................................................... 22

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Acosta v. NAS Ins. Svcs., LLC*,
2025 WL 975007 (C.D. Cal. Mar. 31, 2025) ................................................................20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................5

*Austin v. City of Oakland*,
2018 WL 2427679 (N.D. Cal. May 30, 2018) ......................................................................18

*B.K.B. v. Maui Police Dep't*,
276 F.3d 1091 (9th Cir. 2002)....................................................................................12, 15, 16

*Banaga v. Gov't Emps. Ins. Co.*,
2019 WL 2451418 (S.D. Cal. June 12, 2019)......................................................................18

*Bass v. Cnty. of Butte*,
458 F.3d 978 (9th Cir. 2006).................................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................5

*Buchanan v. NetJets Servs., Inc.*,
2018 WL 1933189 (N.D. Cal. Apr. 24, 2018) ................................................................10, 11

*Campbell v. Arco Marine, Inc.*,
42 Cal. App. 4th 1850 (1996)..........................................................................................9, 10, 11

*Castro v. Classy, Inc.*,
2020 WL 996948 (S.D. Cal. Mar. 2, 2020) ....................................................................20, 21

*Cherosky v. Henderson*,
330 F.3d 1243 (9th Cir. 2003)...............................................................................................17

*Cole v. Antelope Valley Union High Sch. Dist.*,
47 Cal. App. 4th 1505 (1996)..........................................................................................15, 16

*Davidson-Gesser v. Aequor Healthcare Servs., LLC*,
2025 WL 3190824 (C.D. Cal. Sept. 23, 2025)......................................................................7

*Dodd-Owens v. Kyphon, Inc.*,
2007 WL 420191 (N.D. Cal. Feb. 5, 2007)......................................................................10, 11

*Douglas v. Cal. Dep't of Youth Auth.*,
271 F.3d 812 (9th Cir. 2001).................................................................................................17

*Dowell v. Contra Costa Cty.*,
928 F. Supp. 2d 1137 (N.D. Cal. 2013) ................................................................................19

*Ferretti v. Pfizer Inc.*,
2013 WL 140088 (N.D. Cal. Jan. 10, 2013) ........................................................................19

v

Gibson, Dunn &
Crutcher LLP

*Freeman v. Oakland Unified Sch. Dist.*,
    291 F.3d 632 (9th Cir. 2002)..................................................................................12, 13, 14, 15

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)..................................................................................................5

*Gonsalves v. Infosys Techs., LTD.*,
    2010 WL 1854146 (N.D. Cal. May 6, 2010) ........................................................................9, 10

*Hayes v. NASSCO*,
    695 F. App'x 312 (9th Cir. 2017) ............................................................................................17

*Head v. Costco Wholesale Corp.*,
    2025 WL 1592737 (N.D. Cal. June 5, 2025) ........................................................................20, 21

*Iovino v. Michael Stapleton Assocs., Ltd.*,
    600 F. Supp. 3d 610 (W.D. Va. 2022) ..................................................................................12, 14, 16

*Josephs v. Pac. Bell*,
    443 F.3d 1050 (9th Cir. 2006)..................................................................................................12

*Kang v. U. Lim Am., Inc.*,
    296 F.3d 810 (9th Cir. 2002)..................................................................................................7, 8

*Laird v. Cap. Cities/ABC, Inc.*,
    68 Cal. App. 4th 727 (1998)..................................................................................................7, 9

*Lopez v. Bans*,
    2016 WL 6821860 (E.D. Cal. Nov. 18, 2016) ........................................................................18

*Love v. Motion Indus., Inc.*,
    309 F. Supp. 2d 1128 (N.D. Cal. 2004) ................................................................................7

*Luna v. Universal Studio City Prods. LLLP*,
    2013 WL 12308198 (C.D. Cal. Aug. 27, 2013)........................................................................7

*McVay v. DXP Enters., Inc.*,
    645 F. Supp. 3d 971 (C.D. Cal. 2022)..................................................................................20, 21

*Minor v. FedEx Off. & Print Servs., Inc.*,
    78 F. Supp. 3d 1021 (N.D. Cal. 2015) ..................................................................................5

*Morgan v. Regents of Univ. of Cal.*,
    88 Cal. App. 4th 52 (2000)..................................................................................................12

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)..................................................................................................17

*Noone v. Hitachi Rail STS USA, Inc.*,
    2024 WL 3915075 (C.D. Cal. June 17, 2024) ........................................................................19

*Perez v. DNC Parks & Resorts at Asilomar, Inc.*,
    2019 WL 5618169 (E.D. Cal. Oct. 31, 2019) ........................................................................7

Gibson, Dunn &
Crutcher LLP

vi

*Phillips v. Pac. Mar. Ass'n*,
  2025 WL 1726404 (N.D. Cal. June 20, 2025) ...............................................................................7

*Rodriguez v. Airborne Express*,
  265 F.3d 890 (9th Cir. 2001)..............................................................................................15, 16

*Russo v. APL Marine Servs., Ltd.*,
  135 F. Supp. 3d 1089 (C.D. Cal. 2015)...................................................................................10

*Stanley v. Tr. of Cal. State Univ.*,
  433 F.3d 1129 (9th Cir. 2006)..................................................................................................18

*U.S. v. 14.02 Acres of Land More or Less in Fresno Cnty.*,
  547 F.3d 943 (9th Cir. 2008)......................................................................................................5

*Vernon v. State of California*,
  116 Cal. App. 4th 114 (2004).....................................................................................................6

*Wentzo v. Signavio, Inc.*,
  2022 WL 16858834 (C.D. Cal. Sept. 26, 2022).................................................................20, 21

**Statutes**

42 U.S.C. § 2000e-5(e)(1)...............................................................................................................17

42 U.S.C. § 12111(2), (a)..................................................................................................................6

Cal. Code Reg. tit. 2, § 11008 .........................................................................................................9

Fed. R. Civ. P. 12(f) .........................................................................................................................6

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is a Nevada resident formerly employed in Kazakhstan and currently employed in Angola.  In this suit, he invokes California and federal law to challenge employment decisions that occurred abroad.  In his First Amended Complaint, Plaintiff has attempted to address some of the deficiencies in his original pleading, including by adding new allegations regarding administrative exhaustion and Chevron Corporation's purported employer status.  Those new allegations, however, do not save his claims, which fail for several reasons:

*First*, each of Plaintiff's claims fails as a matter of law as to Chevron Corporation because, even with his new allegations, he still does not adequately allege that Chevron Corporation is or was his employer.  Plaintiff's First Amended Complaint adds conclusory allegations that merely describe the ordinary attributes of a corporate parent—centralized HR services, shared policies, and ownership stakes—none of which transforms a parent into an employer under the integrated enterprise test.  The First Amended Complaint still does not allege that Chevron Corporation made any hiring, firing, or disciplinary decisions regarding Plaintiff.  This pleading failure is unsurprising, as Plaintiff was never employed by Chevron Corporation and Chevron Corporation had no role in the facts giving rise to this dispute.  No amendment could cure these deficiencies.

*Second*, California's Fair Employment and Housing Act ("FEHA") does not apply.  Plaintiff worked in Kazakhstan, resides in Nevada, and now lives in Angola.  His new allegations that employment decisions were "coordinated through" Chevron's "Shared HR Services" in California, Dkt. 29 ("First Amended Complaint" or "FAC") ¶ 84, still do not establish that the allegedly tortious conduct actually occurred in California.  Plaintiff still identifies no California-based decisionmaker who made or approved the challenged decisions.  Courts have consistently rejected such vague allegations as insufficient to invoke FEHA's protections for out-of-state conduct.

*Third*, while Plaintiff's First Amended Complaint now alleges administrative exhaustion, two of his retaliation theories—based on his alleged participation in another employee's EEOC proceedings and objection to requests for medical information—exceed the scope of his EEOC Charges and remain

1

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

independently unexhausted.[1]

*Fourth*, Plaintiff's ADA claims are time-barred. The allegedly discriminatory acts that provide the core of his claim all occurred in late 2023. But Plaintiff did not file his initial EEOC charge until December 6, 2024, well outside the 300-day limitations period for pursuing such a claim. Plaintiff's new allegations regarding his May 2024 transfer to Angola do not change this analysis—by Plaintiff's own allegations, that transfer was merely the consequence of time-barred 2023 decisions, not an adverse action.

*Fifth*, Plaintiff's California Whistleblower Protection Act ("WPA") claim fails because he has not alleged that any decisionmaker involved in the challenged employment actions was aware of his protected activity (participating in another employee's EEOC proceedings) when making the challenged decisions.

*Sixth*, Plaintiff's FEHA reasonable accommodation and interactive process claims fail as a matter of law. These claims are premised on schooling accommodations Plaintiff requested for his son. But the statute only requires employers to reasonably accommodate an employee whose association with a disabled person limits the *employee's* own ability to engage in major life activities due to caretaking obligations. It does not require employers to accommodate an employee's disabled family member, as Plaintiff alleges here. These claims are not cognizable and should be dismissed.

For all of these reasons, the Court should dismiss Plaintiff's First Amended Complaint in its entirety. Because Plaintiff was on notice of the pleading deficiencies identified in Defendants' Motion to Dismiss or Strike the Complaint (Dkt. 23) and nevertheless failed to cure them in the First Amended Complaint, the FAC should be dismissed without leave to amend.

## II.    STATEMENT OF ISSUES TO BE DECIDED (LOCAL RULE 7-4(a)(3))

1.    Whether Plaintiff has adequately pleaded that Chevron Corporation was his employer.

2.    Whether FEHA applies to Plaintiff's employment in Kazakhstan where he fails to allege that the challenged decisions occurred in California or were ratified by California-based decisionmakers.

---

[1] Moreover, two of his retaliation theories—his alleged participation in another employee's EEOC proceedings and objection to requests for medical information—exceed the scope of his EEOC Charges and remain independently unexhausted.

3. Whether Plaintiff has adequately pleaded administrative exhaustion of his ADA and FEHA claims.

4. Whether certain of Plaintiff's retaliation theories must be stricken for failure to exhaust administrative remedies.

5. Whether Plaintiff's ADA claims based on 2023 employment actions are barred by the 300-day administrative filing requirement.

6. Whether Plaintiff fails to state a claim under the WPA because he does not plausibly allege employer knowledge and causation.

7. Whether Plaintiff's FEHA reasonable accommodations and interactive process claims fail as a matter of law.

### III.   BACKGROUND

Plaintiff Philip Quinnett's First Amended Complaint names three defendants—Chevron Corporation, Chevron Global Technology Services Company ("Chevron GlobTech"), and Chevron U.S.A., Inc. ("CUSA")—collectively referred to as "Chevron." FAC ¶¶ 1, 7. Plaintiff alleges that Chevron GlobTech and CUSA are wholly owned subsidiaries of Chevron Corporation and maintained their headquarters and principal place of business at the same San Ramon, California address as Chevron Corporation. *Id.* ¶¶ 12–13. He alleges that he has been employed by this collective "Chevron" since 1998. *Id.* ¶ 19.

Although he was hired in California, the events giving rise to this action occurred while he was assigned as an expatriate to Tengizchevroil ("TCO") in Atyrau, Kazakhstan. *Id.* ¶¶ 3, 20. The First Amended Complaint centers on TCO's schooling policy for children of expatriates in Kazakhstan, which required that expatriate employees enroll their children in a company-approved school in order to remain in their assignments. *Id.* ¶ 28. Plaintiff's son has autism. *Id.* ¶ 37. Plaintiff alleges that the TCO-approved school, Dostyk American International School ("DAIS")—not Chevron—refused to enroll his child because it could not meet his child's special needs. *Id.* ¶ 32.

Plaintiff was permitted to enroll his child in a different local school, QSI, for the 2022–2023 school year pending further assessment, but he was advised that he would be expected to transfer to another position if his child could not ultimately enroll at DAIS. *Id.* ¶¶ 33–34.

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

In June 2023, Plaintiff allegedly emailed the DAIS director, Chevron HR, and Chevron Medical representatives regarding a request for additional documentation related to his son's disability. *Id.* ¶ 37. Plaintiff explained his belief that after having provided extensive and sufficient medical information about his son, it was improper for Chevron to seek additional confidential medical information about his child. *Id.* Plaintiff alleges that he had spoken with other employees with disabled children who advised him that the outcome of additional behavioral assessments did not impact Chevron's decision-making concerning providing equal children's educational benefits. *Id.*

Plaintiff alleges that in Summer 2023, he again enrolled his son in the alternative school, QSI, with the belief that TCO would approve his request for reimbursement of school fees. *Id.* ¶ 38.

In September 2023, a different employee filed an EEOC charge concerning TCO's schooling policies. *Id.* ¶ 39. Plaintiff alleges he disclosed concerns to Chevron's Head of Ethics, Compliance, and Internal Investigations, who was in fact the employee who had filed the aforementioned EEOC charge. *Id.* ¶¶ 39, 198–99. Plaintiff does not allege that any decisionmaker involved in the employment actions at issue was aware of his participation in those proceedings when making the challenged decisions. *See generally* FAC.

On October 27, 2023, Chevron allegedly reversed its position on tuition and denied reimbursement *Id.* ¶ 40. Within a week, Plaintiff alleges that he was informed he would not be permitted to remain in his TCO role if his son did not attend the company-approved school. *Id.* ¶ 41. He characterizes this as a forced choice between repatriating or taking leave. *Id.* ¶ 42.

Plaintiff alleges that his employment at TCO ended in December 2023. *Id.* ¶¶ 44, 96, 116. After his TCO employment ended, Plaintiff took a medical leave and later accepted an assignment in Angola beginning in November 2024, which he alleges involved reduced compensation and extended time away from his family. *Id.* ¶¶ 43–47. The First Amended Complaint adds allegations that his transfer to Angola was effectuated in May 2024 and Defendants "retaliated against Plaintiff" when they effectuated this transfer. *Id.* ¶¶ 178, 205; *see id.* ¶ 97. Plaintiff alleges that he is now a Nevada resident. *Id.* ¶ 6.

Plaintiff brings eight claims against Defendants: (1) Associational Disability Discrimination in Violation of the ADA; (2) Retaliation in Violation of the ADA; (3) Associational Disability

Discrimination in Violation of FEHA; (4) Failure to Engage in Good-Faith Interactive Process in Violation of FEHA; (5) Failure to Provide Reasonable Accommodations in Violation of FEHA; (6) Retaliation in Violation of FEHA; (7) Failure to Prevent Discrimination and Retaliation in Violation of FEHA; and (8) Whistleblower Retaliation in Violation of California Labor Code § 1102.5. *See id.* ¶ 1; *see generally* FAC.

The First Amended Complaint alleges that Plaintiff filed a complaint with the California Civil Rights Department on December 4, 2024, and received a Right-to-Sue notice. *Id.* ¶ 51. Plaintiff alleges that on December 6, 2024, he signed an initial EEOC charge, and on April 7, 2025, signed an Amended Charge of Discrimination. *Id.* ¶¶ 52, 56; *see* Declaration of Jesse A. Cripps ("Cripps Decl.") Ex. A (Plaintiff's December 6, 2024 EEOC Charge).[2] Plaintiff received a Notice of Right to Sue from the EEOC on December 4, 2025 and filed this lawsuit on December 23, 2025. FAC ¶¶ 62–63.

## IV.    LEGAL STANDARD

Courts dismiss complaints under Federal Rule of Civil Procedure 12(b)(6) when plaintiffs fail to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to demonstrate "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. In determining whether the complaint states a plausible claim, the court must accept the factual allegations as true, but it is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

___

[2] Defendants respectfully request that the Court take judicial notice of Plaintiff's December 6, 2024 Initial Charge of Discrimination and April 7, 2025 Amended Charge of Discrimination pursuant to Federal Rule of Evidence 201. *See* FAC Ex. A; Cripps Decl. Ex. A. The Charges are records of a federal agency and are not subject to dispute. They are therefore appropriate subjects of judicial notice. *U.S. v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'"); *Minor v. FedEx Off. & Print Servs., Inc.*, 78 F. Supp. 3d 1021, 1027–28 (N.D. Cal. 2015) (taking judicial notice of CRD charges).

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## V.    ARGUMENT

Plaintiff's First Amended Complaint fails on multiple independent grounds. First, although all of Plaintiff's claims can only be brought against his employer, he does not adequately allege that Chevron Corporation—the parent company of the two other defendant corporations—employed him. Nor can he, as Plaintiff was not employed by Chevron Corporation. Plaintiff's new allegations regarding centralized HR services and corporate control are insufficient to transform Chevron Corporation into an employer under the integrated enterprise test. Second, California's FEHA statute does not extend to employment relationships occurring entirely in Kazakhstan, and Plaintiff's new allegations regarding "Shared HR Services" and similar corporate management systems cannot manufacture a California nexus. Third, two of Plaintiff's retaliation theories exceed the scope of his EEOC Charges and should be stricken. Fourth, Plaintiff's ADA claims are time-barred because the allegedly discriminatory acts occurred in 2023, well outside the 300-day limitations period, and his subsequent relocation to Angola was merely a consequence of those earlier decisions. Fifth, Plaintiff's Whistleblower Protection Act claim fails because he has not alleged that decisionmakers responsible for the adverse actions were aware of his purported disclosures when they made the challenged decisions. Finally, Plaintiff's FEHA reasonable accommodation and interactive process claims fail as a matter of law because he seeks accommodations for his son's schooling rather than adjustments to his own work responsibilities. The Court should dismiss the First Amended Complaint in its entirety.

### A.    Plaintiff Fails to Allege that Chevron Corporation Is or Was His Employer.

Plaintiff asserts claims under the ADA, FEHA, and California Whistleblowers Protection Act ("WPA") against three defendants: Chevron Corporation, Chevron Global Technology Services Company ("Chevron GlobTech"), and Chevron U.S.A. Inc. ("CUSA"). *See* FAC ¶ 1; *see generally* FAC. Each of these claims requires Plaintiff to plausibly allege that each defendant was his "employer." 42 U.S.C. §§ 12111(2), 12112(a) (Title I of the ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor management committee" and provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of

disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . ."); *Vernon v. State of California*, 116 Cal. App. 4th 114, 123 (2004) ("The fundamental foundation for liability [under the FEHA] is the existence of an employment relationship . . .") (internal quotation marks omitted); *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004) (to establish a claim under the WPA, plaintiff-employee must show that he was "subjected to an adverse employment action by his employer").  Because the First Amended Complaint pleads no facts showing that Chevron Corporation employed Plaintiff—and, indeed, Plaintiff cannot plead such facts—the claims against Chevron Corporation must be dismissed.[3]

A parent corporation is not automatically liable for the employment practices of its subsidiary merely because of ownership.  *See Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 738 (1998). Courts presume that parent and subsidiary corporations are separate entities, and a parent may be treated as an employer only where the plaintiff plausibly alleges facts demonstrating that the entities functioned as a "single employer" or an "integrated enterprise." *Id.* at 737.  Under the Ninth Circuit's integrated enterprise doctrine, courts consider four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002).  Among these factors, centralized control of labor relations—i.e., which entity made hiring and firing decisions—is the most important.  *Id.* Critically, common ownership alone is insufficient to establish employer liability.  *Laird*, 68 Cal. App. 4th at 738.  Accordingly, courts in this Circuit routinely dismiss parent companies at the pleading stage where a complaint merely alleges corporate ownership, conclusorily claims parents and subsidiaries are "joint employers," or refers collectively to "defendants" without facts showing the parent exercised control over the plaintiff's employment.  *See, e.g.*, *Phillips v. Pac. Mar. Ass'n*, 2025 WL 1726404, at *2 (N.D. Cal. June 20, 2025); *Davidson-Gesser v. Aequor Healthcare Servs., LLC*, 2025 WL 3190824, at *4 (C.D. Cal. Sept. 23, 2025); *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 2019 WL 5618169, at *7 (E.D. Cal. Oct. 31, 2019); *Luna v. Universal Studio City Prods. LLLP*, 2013 WL 12308198, at *6

---

[3] Defendants do not concede that Chevron GlobTech or CUSA are or were Plaintiff's employers and reserve all rights to dispute this characterization.  Because Chevron Corporation is merely a holding company and Plaintiff alleges no basis whatsoever on which it could be held liable as his employer, its dismissal is appropriate at the motion to dismiss stage.

(C.D. Cal. Aug. 27, 2013).

Plaintiff's First Amended Complaint attempts to cure the deficiencies of his original pleading by adding new allegations about Chevron Corporation. *See* FAC ¶¶ 14, 23, 27, 45, 50, 68–74, 84–85, 106–108. These new allegations still fail to establish that Chevron Corporation was Plaintiff's employer. Plaintiff now alleges that Chevron Corporation provides "human resources management" to its subsidiaries through "Chevron HR Shared Services," including "centralized policies regarding pay, benefits, and terms and conditions of employment." *Id.* ¶ 14. He conclusorily alleges that Chevron Corporation "exercise[s] significant control over TCO's day-to-day operations" without providing any supporting facts. *Id.* ¶ 23; *see also id.* ¶ 69 (Chevron Corporation "retained ultimate control over the terms and conditions of employment for employees serving in expatriate roles at TCO," without any specifics). And he conclusorily alleges that TCO "functioned as a business-entity agent or joint employer" for Chevron Corporation. *Id.* ¶ 108. But these allegations still do not identify which entity actually hired or supervised him, paid his wages, or made employment decisions affecting him. And Plaintiff continues to rely primarily on collective allegations against "Defendants." *See id.* ¶ 1 (Plaintiff "brings associational disability and retaliation claims against his employers Chevron Corporation, Chevron Global Technology Services Co. ('Chevron GlobTech'), and Chevron USA Inc. ('CUSA'), hereinafter referred to together as 'Chevron.'").

That Plaintiff failed to include such facts is no surprise, as Chevron Corporation made no employment decisions as to him and had no role or involvement in the facts underlying this dispute. Plaintiff's new allegations describe the ordinary attributes of a corporate parent—centralized HR services, shared policies, and ownership stakes—none of which transforms a parent into an employer under the integrated enterprise test. The most important factor under the integrated employer test is centralized control of labor relations—i.e., which entity made hiring and firing decisions. *Kang*, 296 F.3d at 815. Plaintiff does not allege that Chevron Corporation made hiring, firing, or disciplinary decisions. The most Plaintiff can muster is a confusing allegation that Chevron Corporation was somehow involved in "transferring [his] employment between Chevron GlobTech and CUSA" after it was decided that he could not remain at TCO—in other words, *after* the allegedly adverse employment actions he challenges. FAC ¶ 73. Even generously understood, this allegation does not amount to a

hiring, firing, or disciplinary decision; it merely reflects corporate relations between a holding company and its subsidiaries, not any substantive conduct akin to an employer's.

Nor does Plaintiff allege that Chevron Corporation supervised his day-to-day work. His pay stubs issued from Chevron GlobTech (while in Kazakhstan) and CUSA (while in Angola)—not Chevron Corporation. FAC ¶ 10. These are the hallmarks of a subsidiary employer, not a parent corporation. The fact that Chevron Corporation provides centralized HR services and policies to its subsidiaries and affiliates does not make it the employer of those subsidiaries' employees. *See Laird*, 68 Cal. App. 4th at 738.

Plaintiff's new allegations regarding TCO executives similarly do not establish that Chevron Corporation was Plaintiff's employer. That these individuals have at certain times been employed by Chevron Corporation and at other times employed by TCO says nothing about whether Chevron Corporation employed Plaintiff during the events at issue here. Although Plaintiff alleges that Kevin Lyon was involved in the decisions he challenges while Mr. Lyon served as TCO's General Manager, *see* FAC ¶¶ 34, 41, Mr. Lyon's hiring by Chevron Corporation after the events at issue in the FAC does not retroactively make Chevron Corporation Plaintiff's employer during the relevant period.

Because Plaintiff has not and cannot plausibly allege that Chevron Corporation was his employer, each of his claims fails as a matter of law as to Chevron Corporation. The Court should therefore dismiss Chevron Corporation from this action pursuant to Rule 12(b)(6).

### B. California's FEHA Statute Does Not Apply to Plaintiff's Employment in Kazakhstan.

California's Fair Employment and Housing Act does not regulate employment relationships occurring entirely outside the state. Plaintiff cannot invoke FEHA for his Kazakhstan-based employment, and all five of his FEHA claims fail as a matter of law.

FEHA requires a plaintiff to plead either (1) that he was employed in California or (2) that the allegedly tortious conduct took place in California. *Gonsalves v. Infosys Techs.*, *LTD.*, 2010 WL 1854146, at \*5 (N.D. Cal. May 6, 2010). The statute's applicability is unambiguous: "[E]mployees located outside of California are not themselves covered by the protections of the [FEHA] if the allegedly unlawful conduct did not occur in California, or the allegedly unlawful conduct was not ratified by decision makers or participants in unlawful conduct located in California." Cal. Code Reg.

9

tit. 2, § 11008 (d)(1)(C); *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996) (FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California"). This principle reflects the broader presumption against extraterritorial application of state statutes. *See Campbell*, 42 Cal. App. 4th at 1858–59 (explaining the "serious constitutional concerns" inherent in extraterritorial FEHA application and concluding that "the Legislature certainly did not intend to interfere with employment relationships between residents of other states being performed wholly in other states"); *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015) ("Ordinarily, state statutes are not given extraterritorial effect.").

Courts consistently apply this principle to dismiss FEHA claims lacking a genuine California nexus. In *Campbell*, the plaintiff, a Washington resident, brought sexual harassment claims against her employer under FEHA based on conduct that took place aboard a ship on the high seas. *Id.* at 1852–55. Although the employer was headquartered in California, the plaintiff did not allege that anyone "in its headquarters participated in or ratified the conduct." *Id.* at 1858. The California Court of Appeal held that FEHA did not apply. *Id.* at 1860. Similarly, in *Buchanan v. NetJets Servs., Inc.*, 2018 WL 1933189, at *3 (N.D. Cal. Apr. 24, 2018), the court dismissed FEHA claims where a Texas-based plaintiff offered only conclusory allegations that unnamed company officers and agents in California ratified discriminatory conduct. The court held that such generic ratification allegations could not render FEHA applicable, even though the plaintiff alleged he was first hired by the employer in California and had worked there before the relevant incidents occurred. *Id.* at *2–3; *accord Gonsalves*, 2010 WL 1854146, at *5 (dismissing FEHA claims where an Ohio resident plaintiff alleged that he traveled to California for work and managed clients there because "no connection exists between the California activities and the discrimination at issue"). Courts have also rejected the argument that the dissemination of corporate policies from California headquarters suffices to invoke FEHA. *Dodd-Owens v. Kyphon, Inc.*, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007). Blanket allegations that policies originated in California do not convert foreign employment decisions into California conduct. *See id.*

Plaintiff's First Amended Complaint fails both prongs of the FEHA analysis. He does not allege that he was employed in California, and he does not allege that tortious conduct occurred in California.

*See Gonsalves*, 2010 WL 1854146, at \*5.  Instead, the FAC affirmatively demonstrates the opposite: Plaintiff is a Nevada resident who worked in Atyrau, Kazakhstan, and transferred to a position in Angola.  FAC ¶¶ 3, 6, 10, 20, 46.  Every employment decision he challenges—denial of reimbursement, termination of his TCO assignment, and repatriation—occurred within that foreign employment context.  *See id.* ¶¶ 40–42, 96, 114–16.

Plaintiff may try to invoke California jurisdiction by pointing to his generic allegations that the at-issue decisions were "reviewed and ratified by multiple Chevron officers, directors, and managing agents."  *See, e.g.*, ¶ 118.  But he identifies none of these individuals, alleges nothing about their locations when they supposedly ratified the decisions, and describes no specific conduct occurring in California.  Nowhere does the Complaint identify a single California-based executive who made or approved the challenged decisions.  *See generally* FAC.  These vague allegations fail as a matter of law.  *Buchanan*, 2018 WL 1933189, at \*3 (generic ratification allegations insufficient); *Campbell*, 42 Cal. App. 4th at 1860 (allegations insufficient where plaintiff failed to allege that any specific person at California headquarters participated in or ratified the adverse action).

Plaintiff's First Amended Complaint attempts to manufacture a California nexus through new allegations that employment decisions were "coordinated through, ratified, and approved by Defendant Chevron Corporation's Shared HR Services."  FAC ¶ 84.  He also alleges that he received notice of his new Angola assignment "via Chevron's internal transfer system, on information and belief, administered by Chevron Corporation's Shared HR Services based out of San Ramon, California."  *Id.* ¶ 45.  But these allegations are precisely the type of vague ratification allegations that courts have rejected as insufficient to invoke FEHA.  Plaintiff still identifies no California-based individual who made or approved the challenged decisions.  He does not allege that any specific person in San Ramon reviewed his case or authorized his transfer.  The mere fact that Chevron maintains centralized HR services in California does not transform foreign employment decisions into California conduct.  *See Dodd-Owens*, 2007 WL 420191, at \*3 (blanket allegations that policies originated in California do not convert foreign employment decisions into California conduct); *Buchanan*, 2018 WL 1933189, at \*3 (generic ratification allegations cannot render FEHA applicable).

Because California's FEHA statute does not extend to Kazakhstan-based employment

11

decisions, the Court should dismiss all five FEHA claims.

### C.    Plaintiff Failed to Exhaust Administrative Remedies for All of His Retaliation Theories.

While Plaintiff's First Amended Complaint now alleges that he filed administrative charges with the CRD and EEOC, *see* FAC ¶¶ 51–63, it improperly advances two retaliation theories which are distinct from and unrelated to the allegations in Plaintiff's EEOC Charges and are thus unexhausted. Because these theories exceed the scope of what the EEOC investigated based on Plaintiff's Charges, they should be stricken under Rule 12. *See Iovino v. Michael Stapleton Assocs., Ltd.*, 600 F. Supp. 3d 610, 625–26 (W.D. Va. 2022) (striking under Rule 12 specific paragraphs of a plaintiff's complaint where the allegations therein "would multiply the theories by which she seeks relief on her retaliation claim" and "[n]o interpretation of" the agency charge could "sustain these new, unexhausted theories of retaliation").

Both FEHA and the ADA require plaintiffs to exhaust administrative remedies before filing suit. *See Josephs v. Pac. Bell*, 443 F.3d 1050 (9th Cir. 2006) ("An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court."); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 63 (2000) (FEHA claims must be administratively exhausted before filing suit). Exhaustion requires filing a timely charge with the appropriate administrative agency or agencies—the federal EEOC and/or the CRD—and obtaining a "right-to-sue" notice. *Josephs*, 443 F.3d, at 1061; *Bass v. Cnty. of Butte*, 458 F.3d 978, 982 (9th Cir. 2006). The administrative exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quotation omitted).

In *Freeman*, the Ninth Circuit explained that when determining whether allegations have been exhausted, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." 291 F.3d at 636 (quotation omitted). Critically, "[t]he inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations *made in the charge itself*, describing the discriminatory conduct about which a plaintiff is grieving" as "[o]nly by engaging in such an inquiry will the actual focus of the administrative charge,

12

and the scope of the claims exhausted, be revealed." *Id.* at 637 (emphasis added). "The rule of liberal construction does not suggest that a plaintiff sufficiently exhausts his administrative remedies . . . by merely mentioning the word 'discrimination' in his or her EEOC administrative charge." *Id.*

Applying this framework, the Ninth Circuit held that the plaintiff failed to exhaust his administrative remedies because the allegations in his complaint were not "like or reasonably related to" those in his EEOC charge. *Id.* In his charge, plaintiff generally alleged that "[r]acial and sexual discriminatory practices among the teaching staff[] continue to persist." *Id.* at 634. But the charge specifically alleged purported discrimination in the context of an annual election among school faculty to select representatives on matters relating to the school; it did not mention class size, teaching assignments, or the manner in which the school district handled a dispute over a transition to eight-period school days, all of which were raised for the first time in plaintiff's complaint. *Id.* at 634–35, 637. The Court reasoned that these allegations "clearly would not have been necessary to, or addressed in, the scope of an investigation into the conduct of the [. . .] elections." *Id.* at 637. As such, and "[d]espite [plaintiff's] cursory reference to 'racial and sexual discrimination' in his EEOC charge, an analysis of the actual charge demonstrates that the allegations contained therein were in no way 'like or reasonably related' to the claims in his First Amended Complaint," which had not been properly exhausted. *Id.* at 638.

Under even the most generous reading, Plaintiff's EEOC Charges present only two potential bases for retaliation: (1) his request to allow his son to attend a similar local school instead of the TCO-approved school policy, and/or (2) his related request for reimbursement of his child's school fees. FAC Ex. A at 1; Cripps Decl. Ex. A. The First Amended Complaint, however, advances two additional retaliation theories that appear nowhere in Plaintiff's EEOC Charges: (1) that he participated in another employee's EEOC proceedings, and (2) he objected to requests for his son's medical information. FAC ¶¶ 37, 39, 59, 90–91, 98, 155, 170, 173, 179–180, 199. These theories were not exhausted and should be stricken.

### 1.    Plaintiff's EEOC Charges Do Not Encompass His Retaliation Theories.

Plaintiff alleges that Defendants retaliated against him for "participat[ing] in the investigation of another employee's complaints of alleged disability discrimination for the purposes of filing an

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

EEOC charge in September 2023." FAC ¶ 59; *see id.* ¶¶ 39, 90–91, 99, 170, 179–180, 182, 199. Neither EEOC charge contains anything similar. *See* FAC Ex. A; Cripps Decl. Ex. A. The charges do not state that Plaintiff was even aware of—let alone participated in—another employee's disability discrimination proceedings. Because nothing in the charges put Defendants or the EEOC on notice that Plaintiff participated in other EEOC proceedings or believed he faced retaliation for that participation, this theory was not exhausted. *See Freeman*, 291 F.3d at 637 (finding claim unexhausted because it "would not have been necessary to, or addressed in, the scope of an investigation into" the conduct identified in the charge). These unexhausted allegations must be stricken. *Iovino*, 600 F. Supp. 3d at 624–25.

Plaintiff also alleges that Defendants retaliated against him for "oppos[ing] the discriminatory requirement that all children of resident expatriate employees had to attend a school that was unable to accommodate them" by "specifically object[ing] to a request that he submit additional extensive confidential medical information about his child." FAC ¶¶ 90, 173; *see id.* ¶¶ 37, 157. Again, Plaintiff's EEOC charges provide no indication that he intended to advance this theory. The charges allege protected activity consisting of requests to send his child to an unapproved school and to receive fee reimbursement. They do not mention any request for medical information by TCO or Defendants, Plaintiff's refusal to provide it, or his awareness that "other employees" had provided similar information. The EEOC could not have known, based on the charges, that Plaintiff opposed a discriminatory policy by refusing to supply medical information. This theory is therefore unexhausted. *See Freeman*, 291 F.3d at 637 (holding that allegations concerning class size or teaching assignments "would not have been necessary to, or addressed in, the scope of" an EEOC investigation focused on discrimination in faculty elections). It, too, should be stricken. *Iovino*, 600 F. Supp. 3d at 624–25.

### 2.    The New Allegations in Plaintiff's FAC Are Insufficient.

Plaintiff may argue that the exhaustion allegations he added to his FAC in response to Defendants' Motion to Dismiss or Strike the Complaint (Dkt. 23) cure his charges' deficiencies. This argument fails. Indeed, the new allegations underscore these deficiencies, as they make clear that he attempted to retroactively expand the operative charge *because* the EEOC's investigation did not encompass his retaliation theories. *See* FAC ¶¶ 51–63.

14

The Ninth Circuit has made clear that whether the EEOC in fact investigated a claim "is not material for purposes of exhaustion." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099–1100 (9th Cir. 2002). The relevant inquiry is instead whether the claim could "reasonably be expected to grow out of the charge." *Id.* The inquiry "must focus on the factual allegations *made in the charge itself.*" *Freeman*, 291 F.3d at 637. Accordingly, a plaintiff cannot supplement his administrative charges through informal communications with EEOC investigators. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) ("This circuit has previously refused to consider oral statements conveyed to a DFEH investigator to determine the scope of a reasonable investigation."); *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal. App. 4th 1505, 1515 (1996) ("[I]t would not be practical to allow an employee to substitute unverified information relayed to the DFEH in correspondence, or orally, for a formal administrative charge.").

At most, Plaintiff's administrative charges present two narrow bases for retaliation: (1) his request that his son be permitted to attend a similar local school instead of the approved school, DAIS, and (2) his related request for tuition reimbursement. *See* FAC Ex. A at 1; Cripps Decl. Ex. A. The charges never identified two specific protected acts now pleaded as separate retaliation predicates—participation in another employee's EEOC matter and refusal to provide further confidential medical information—even though these acts were known to Plaintiff before he signed the amended charge. These new retaliation theories were not administratively exhausted.

Plaintiff cannot reasonably argue that his narrow charges put the EEOC or Defendants on notice that he believed he was retaliated against for objecting to requests for medical information or participating in another employee's EEOC proceedings. *See* FAC ¶¶ 37, 39, 59, 90–91, 98, 157, 170, 173, 179–180, 182, 199. The medical information and EEOC proceedings theories involve fundamentally different conduct by Plaintiff, different decisionmaker knowledge, and different causal links. As such, they are not "like or reasonably related to" the charges and were not exhausted. *Freeman*, 291 F.3d at 636.

The FAC's new allegations about Plaintiff's communications with the EEOC only confirm that he failed to exhaust these theories through proper administrative channels. Plaintiff alleges that he signed his initial EEOC charge on December 6, 2024, and then completed an EEOC intake interview

15

on February 20, 2025. FAC ¶¶ 51–53. After the interview, the investigator asked him to sign an amended charge reflecting "the additional content discussed in" that interview. *Id.* ¶¶ 54–55. Plaintiff does not explain what this "additional content" was, though he tries to imply—without clearly alleging—that it included the additional bases for retaliation he now asserts in his FAC. *See id.* ¶ 56.

After Plaintiff obtained a copy of Defendants' position statement on July 17, 2025, he began his efforts to expand his charges through informal correspondence. *See id.* ¶¶ 58–61. On October 1, 2025—nearly a year after he filed his initial charge and six months after he filed the amended charge— he emailed the EEOC investigator to "elaborate on the retaliation for protected activity already within the scope of what was being investigated by the EEOC, explaining that he had engaged in participation in another employee's EEOC charge related to highly similar conduct." *Id.* ¶ 59. On November 20, 2025, he again emailed the investigator to add "further details regarding the additional bases" for his retaliation claim. *Id.* ¶ 60. And on December 2, 2025, he requested a right-to-sue notice based on his understanding that the April 7, 2025 amended charge language already exhausted all of his retaliation claims, including "any basis of retaliation Chevron might have possessed against Plaintiff." *Id.* ¶ 61.

Crucially, the FAC does not allege that the EEOC investigator ever confirmed the agency was investigating these retaliation theories or that Plaintiff was correct to conclude that the right-to-sue notice would exhaust them. *See id.* ¶¶ 51–63. The allegations merely describe Plaintiff's efforts to shoehorn additional retaliation predicates into his already-filed charges. They also make plain that Defendants were not on notice of these theories, as Plaintiff specifically alleges that he raised them to the EEOC investigator only *after* he obtained Defendants' position statement.

Plaintiff cannot cure his omission of distinct retaliation theories merely by alleging that he emailed the EEOC investigator about them many months after he filed his charges. *See B.K.B.*, 276 F.3d at 1099–1100; *Rodriguez*, 265 F.3d at 897; *Cole*, 47 Cal. App. 4th at 1515. His administrative charges define the scope of exhaustion, and those charges did not include the medical information or EEOC participation theories. Because Plaintiff failed to exhaust these retaliation theories, the associated allegations should be stricken. *See Iovino*, 600 F. Supp. 3d at 625–26.

**D.    Plaintiff's ADA Claims Based on 2023 Conduct Are Time-Barred.**

Plaintiff's ADA claims are time-barred and should be dismissed with prejudice.

A discrimination charge alleging violations of the ADA must be filed with the EEOC within 180 days of the allegedly discriminatory act, though that deadline is extended to 300 days if the plaintiff initially instituted proceedings with a state or local agency with authority to grant or seek relief from such a practice. 42 U.S.C. § 2000e-5(e)(1); *see Hayes v. NASSCO*, 695 F. App'x 312, 312–13 (9th Cir. 2017) (citing *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 & n.11 (9th Cir. 2001)). Plaintiff alleges that he filed his Initial Charge on December 6, 2024. FAC ¶ 52. Accordingly, actionable conduct must have occurred on or after February 10, 2024.

The allegedly discriminatory acts fall outside this limitations period. The FAC alleges that Plaintiff's tuition reimbursement request was denied on October 27, 2023. FAC ¶ 40. It alleges that Plaintiff was notified shortly thereafter that he would not be permitted to remain in his TCO position. *Id.* ¶ 41. It further alleges that he was told he would be required to repatriate or take leave in October 2023. *Id.* ¶ 42. And it alleges that his employment at TCO ended in December 2023. *Id.* ¶¶ 44, 96, 116. None of these discrete employment actions occurred within the statutory window.

Plaintiff may try to evade dismissal of his ADA claims by arguing that the TCO schooling policy constitutes a continuing violation not subject to tolling. That argument fails. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), the Supreme Court held that discrete acts such as termination or denial of benefits are independently actionable and not subject to the continuing violations doctrine. The Ninth Circuit reaffirmed in *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003), that employees cannot challenge time-barred conduct by characterizing it as part of an ongoing policy. The continuing violations doctrine applies only where a systemic discriminatory practice operated within the limitations period, *and* the plaintiff was exposed to it during that period. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822–24 (9th Cir. 2001).

By Plaintiff's own account, his employment at TCO ended in December 2023. FAC ¶¶ 44, 96, 116, 177, 204 (Defendants "required Plaintiff to take a leave of absence, transfer to a less desirable schedule and location, and accept a substantial cut to his total compensation, to continue working at Chevron, as of December 2023"). He cannot plausibly claim that he was continuously subject to the TCO-specific schooling policy after his TCO placement ended. Plaintiff's claims arise from discrete decisions made in 2023, not from continuing exposure during the limitations window.

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

Plaintiff may try to avoid the time bar by arguing that his May 2024 transfer to Angola constituted a separate adverse action within the limitations period. *See* FAC ¶¶ 97, 178, 205. This argument fails. The FAC itself characterizes the Angola assignment as *a consequence of* earlier adverse actions: "As a result, Plaintiff lost out on nearly a year of expatriate pay and benefits while he sought visas and completed required training and certifications to transfer to Malongo, Angola, where he remains to this day." FAC ¶ 4. Plaintiff's case rests on allegations that Defendants forced him to leave his Kazakhstan placement because of his association with his disabled son. The allegedly adverse actions had all occurred by December 2023. His Angola assignment is merely a later consequence of an earlier decision that Plaintiff alleges was discriminatory. Although the job Plaintiff obtained after his departure from Kazakhstan may bear on damages, it cannot constitute a discrete discriminatory act made unlawful by the ADA. *Lopez v. Bans*, 2016 WL 6821860, at *4 (E.D. Cal. Nov. 18, 2016) ("[A] delayed, inevitable consequence of a past injury suffered will not cause accrual of a new claim or the start of a new limitations period.") (collecting authority); *see also Stanley v. Tr. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.") (internal citation and quotation omitted).

Because Plaintiff's ADA claims are statutorily untimely and cannot be cured through amendment, they should be dismissed with prejudice. *Austin v. City of Oakland*, 2018 WL 2427679, at *5 (N.D. Cal. May 30, 2018); *Banaga v. Gov't Emps. Ins. Co.*, 2019 WL 2451418, at *8 (S.D. Cal. June 12, 2019) ("Since these claims are statutorily untimely and cannot be cured through amendment, Plaintiff's ADA claims will be dismissed with prejudice.").

**E.     Plaintiff's Whistleblower Protection Act Claim Fails for Lack of Causation.**

Plaintiff's California Whistleblower Protection Act ("WPA") claim fails because his First Amended Complaint does not establish the required causal nexus between his purported disclosure and any adverse employment action.

To state a WPA claim, a plaintiff must allege that (1) he disclosed a violation of law or regulation and (2) "retaliation for [his] protected activities was a contributing factor in a contested employment action." *Noone v. Hitachi Rail STS USA, Inc.*, 2024 WL 3915075, at *4–5 (C.D. Cal. June

17, 2024) (quotation and citation omitted).  "The employer's awareness is an essential component of the causal link." *Dowell v. Contra Costa Cty.*, 928 F. Supp. 2d 1137, 1156 (N.D. Cal. 2013).  A plaintiff may establish causation by showing that: "(1) one of the decision makers responsible for each of the adverse employment actions taken against Plaintiff had knowledge that Plaintiff had engaged in protected activity, *and* (2) there is close proximity in time between the protected activity and the adverse employment action." *Ferretti v. Pfizer Inc.*, 2013 WL 140088, at *10 (N.D. Cal. Jan. 10, 2013) (emphasis added).

In *Noone*, the court found that Plaintiff had not sufficiently alleged causation because he did not allege that those responsible for his termination were aware of his protected activity.  2024 WL 3915075, at *5.  The court explained that "although Plaintiff asserts that he reported the purportedly illegal activity to certain officers in Defendant's Human Resources Office, Legal Department, and Ethics Office," the complaint generally stated  "that 'Defendant' placed Plaintiff on a Performance Improvement Plan and eventually fired Plaintiff."  *Id.*  As such, the complaint failed to "sufficiently demonstrate whether the individuals that he reported [the] allegedly illegal activity to were involved in the decision to terminate [him], or otherwise disclosed [the] report to whomever terminated Plaintiff." *Id.*

Plaintiff's First Amended Complaint suffers from the same deficiency.  Plaintiff's WPA claim appears to be premised on a narrow universe of facts: that he disclosed concerns about associational disability discrimination to Chevron's Head of Ethics, Compliance, and Internal Investigations and provided testimony in connection with that individual's own EEOC charge.  FAC ¶¶ 198–99.  But the First Amended Complaint does not allege that any of the decisionmakers involved in the challenged actions *were aware of* Plaintiff's purported disclosures to the ethics officer or his participation in that individual's EEOC proceedings when making the challenged decisions.  And although Plaintiff alleges that "*Defendants* would easily be able to identify [Plaintiff] after receiving [the ethics officer's EEOC charge] in September 2023," FAC ¶ 199 (emphasis added), the FAC fails to allege that the *decisionmakers* involved in the purportedly adverse actions reviewed or were even aware of this charge.  Like the plaintiff in *Noone*, Plaintiff here has failed to allege causation, and his WPA claim should likewise be dismissed.  2024 WL 3915075, at *5.

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO

**F.** **The Failure to Provide Reasonable Accommodations and Failure to Engage in Interactive Process Claims Fail as a Matter of Law.**

Plaintiff's FEHA failure to provide reasonable accommodations and failure to engage in the interactive process claims fail as a matter of law and should be dismissed.

FEHA may impose an obligation on employers to reasonably accommodate an employee's association with a disabled family member when the employee seeks adjustments to their own work to perform necessary caregiving. *See Castro v. Classy, Inc.*, 2020 WL 996948, at *5 (S.D. Cal. Mar. 2, 2020). Courts have allowed reasonable accommodation and interactive process claims to proceed when the plaintiff sought adjustments to their work schedules, hours, or the availability of remote work so they could provide necessary care for disabled family members. *See, e.g.*, *id.* (failure to accommodate request to work from home to be with disabled infant son); *McVay v. DXP Enters., Inc.*, 645 F. Supp. 3d 971, 974 (C.D. Cal. 2022) (request for leave to attend to children suffering from respiratory illnesses); *Acosta v. NAS Ins. Svcs., LLC*, 2025 WL 975007, at *1, *3–4 (C.D. Cal. Mar. 31, 2025) (request for reduced hours, flexible schedule, and ability to work from home to care for infant son with developmental delay); *Head v. Costco Wholesale Corp.*, 2025 WL 1592737, at *1, *24 (N.D. Cal. June 5, 2025) (request for time off to care for wife with cancer). In all these cases, each plaintiff's association with a disabled person limited the plaintiff's own ability to engage in major life activities due to caretaking obligations, thereby giving rise to the plaintiff's own need for a reasonable accommodation in their work schedule.

Plaintiff's claims are fundamentally different. He has never alleged that his disabled son "required care that only he could provide, such that his ability to work" was impaired. *Wentzo v. Signavio, Inc.*, 2022 WL 16858834, at *8 (C.D. Cal. Sept. 26, 2022). Instead, he claims that his employer was obligated to engage in an interactive process regarding an accommodation for his son's schooling—not his own job responsibilities or work schedule.

*Wentzo* demonstrates why this theory fails. There, the plaintiff informed his employer that he intended to relocate from Los Angeles to France to be in "a healthier and less stressful environment for his then-pregnant wife, who was experiencing severe stress as a result of the ongoing Covid-19 pandemic, as well as the wildfires, pollution, and protests in Los Angeles." *Id.* at *1. Plaintiff alleged that he had been promised he could work from "wherever he resided," and he and his supervisors were

20

already working remotely. *Id.* When the request was denied, plaintiff resigned. *Id.* at *2. Plaintiff sued for, *inter alia*, failure to engage in an interactive process for a requested reasonable disability accommodation under FEHA. *Id.* As is relevant here, the court dismissed the claim because plaintiff failed to adequately plead that he was disabled by association. *Id.* at *6–8. It explained that to pass muster under Rule 12(b)(6), a plaintiff must allege that their "association with a disabled person limited their own ability to engage in their own major life activities, thereby giving rise to their own need for a reasonable accommodation." *Id.* at *7. Because the plaintiff had not alleged that his wife "required care that only he could provide, such that his ability to work, or any of his other major life activities, was impaired," his claim failed. *Id.* at *8.

Plaintiff's claims fail for these same reasons. By his own admission, "[t]he *sole problem* with Plaintiff's employment arose when he sought to enroll his child at Chevron's then-preferred local elementary school for resident expatriate children, DAIS, in August of 2022" and "DAIS administrators quickly determined that they would be unable to accommodate Plaintiff's child's apparent developmental disability." FAC ¶ 32; *see also id.* ¶ 48. Plaintiff does not allege that his son's autism required him to undertake any caretaking responsibilities at all, let alone to such an extent that these responsibilities impaired his work or any other major life activity. He does not allege that he sought modifications to his job duties or schedule to accommodate such responsibilities. Instead, he alleges only that he sought an exception to the generally applicable expatriate schooling policy so he could "enroll his child in an alternative, equivalent school on site" and receive reimbursement for the associated fees. *Id.* ¶¶ 131, 133.

FEHA's reasonable accommodation and interactive process requirements apply when a nexus exists between the requested accommodation and the employee's caretaking obligations and job responsibilities. Plaintiff has pleaded no such nexus. His claims are not cognizable under FEHA and should be dismissed. *See Wentzo v. Signavio, Inc.*, 2022 WL 16858834, at *7–8; *compare Castro v. Classy, Inc.*, 2020 WL 996948, at *5; *McVay v. DXP Enters., Inc.*, 645 F. Supp. 3d at 974; *Acosta v. NAS Ins. Svcs., LLC*, 2025 WL 975007, at *3–4; *Head v. Costco Wholesale Corp.*, 2025 WL 1592737, at *24.

## VI.    CONCLUSION

For the reasons above, the Court should dismiss Plaintiff's First Amended Complaint in its entirety.  Because Plaintiff was on notice of the pleading deficiencies identified in Defendants' Motion to Dismiss or Strike the Complaint (Dkt. 23) and still failed to cure them in his First Amended Complaint, the FAC should be dismissed without leave to amend.

DATED: April 16, 2026                                    Respectfully submitted,

                                                         GIBSON, DUNN & CRUTCHER LLP


                                                         By: */s/ Jesse A. Cripps*
                                                              Jesse A. Cripps

                                                         *Attorneys for Defendants*
                                                         CHEVRON CORPORATION, CHEVRON
                                                         GLOBAL TECHNOLOGY SERVICES
                                                         COMPANY, and CHEVRON U.S.A. INC.

DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:25-cv-10950-AMO